**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.P.-1 and J.P.-2**

**No. 21-0805** (Preston County 20-JA-57 and 20-JA-58)

**MEMORANDUM DECISION**

Petitioner Mother S.G., by counsel Michael Safcsak, appeals the Circuit Court of Preston County's September 7, 2021, order terminating her parental rights to J.P.-1 and J.P.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Kristen D. Antolini, filed a response on the children's behalf in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner's substance abuse impacted her ability to parent, she failed to adequately supervise the children, she failed to provide stable housing, and she exposed the children to domestic violence. Specifically, the DHHR alleged that in early May of 2020 the father was arrested for domestic battery after striking petitioner in the presence of the children, and that in late May of 2020 petitioner was charged with destruction of property, domestic assault, obstructing an officer, and

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as J.P.-1 and J.P.-2, respectively, throughout the memorandum decision.

battery of an officer after petitioner purposefully wrecked a vehicle into the father's place of business during a domestic altercation with the father. Petitioner later pled no contest to destruction of property and battery of an officer. Further, petitioner pled no contest to providing false information to the police and child neglect creating risk of injury in June of 2020, after then-five-year-old J.P.-1 was twice found walking alone by a busy highway by law enforcement officers. Additionally, the DHHR alleged that on July 14, 2020, petitioner was arrested and incarcerated for grand larceny and entry of a building other than a dwelling after she allegedly took a key from an outbuilding and stole a pickup truck while impaired by drugs and alcohol. Finally, the DHHR alleged that immediately prior to the filing of the petition, petitioner took J.P.-1 to live at a campsite in the woods, but left J.P.-2 to live with the father. The DHHR alleged that petitioner failed to provide for the children's basic needs and continued to abuse alcohol. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in August of 2020. Petitioner stipulated that she exposed the children to domestic violence and abused alcohol and other substances while the children were in her care. The circuit court accepted the stipulation and adjudicated petitioner as an abusing parent. In October of 2020, the court granted petitioner a post-adjudicatory improvement period. Under the terms of her improvement period, petitioner agreed to participate in all multidisciplinary team meetings, adult life skills and parenting classes, substance abuse treatment, random drug screenings, supervised visitation, and a parental fitness evaluation. Petitioner's family case plan also required her to maintain suitable housing, obtain gainful employment, and stay in contact with the DHHR and her counsel.

In March of 2020, petitioner failed to appear at a review hearing, but her counsel represented her and proffered that petitioner was no longer incarcerated and had enrolled in an inpatient substance abuse program. The court extended petitioner's post-adjudicatory improvement period but ordered that it would expire on April 2, 2021. On April 20, 2021, the court held a review hearing. Petitioner appeared electronically as she was reincarcerated for violating the terms of her bond. That same month, the DHHR filed discovery, which included petitioner's criminal records showing that she pled guilty to the felony of grand larceny in February of 2021 and was released on probation to attend substance abuse treatment. The criminal court also required petitioner to submit drug screens with the Day Report program. However, by late March of 2021, the criminal court imposed a sentence of not less than one nor more than ten years of incarceration. The DHHR's case plan recommended the termination of petitioner's parental rights citing petitioner's lack of progress due to her repeated incarcerations and that petitioner had not participated in any visitations with the children.

The circuit court convened for a hearing in May of 2021. The DHHR reported that petitioner was given the opportunity to complete inpatient substance abuse treatment but was removed from the program and reincarcerated. As such, the DHHR requested the termination of petitioner's parental rights, but the circuit court continued the hearing to July of 2021. At the subsequent hearing, the DHHR presented evidence that petitioner completely failed to drug screen as required by both the terms of her probation and her improvement period during the approximately seven weeks that she was not incarcerated. Additionally, the children's therapist testified regarding the children's extensive treatment for behavioral issues, developmental delays, and trauma. She also stated that J.P.-1 disclosed witnessing the parents' substance abuse

2

and impaired states as well as domestic violence. Petitioner testified that she attended inpatient substance abuse treatment for seven weeks before being removed from that program for noncompliance and, as a result, was reincarcerated. The matter was ultimately continued to August of 2021, at which point the court found that petitioner failed to respond to her case plan as she did not submit to the required drug screening during her time in inpatient drug rehabilitation, and as a result, also violated the terms of her probation and was reincarcerated. Ultimately, the court found that the DHHR proved by clear and convincing evidence that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future. The circuit court concluded that there was no less restrictive alternative to termination of petitioner's parental rights and that termination of her rights was in the children's best interests. Accordingly, the circuit court terminated petitioner's parental rights to the children by its September 7, 2021, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less restrictive dispositional alternative. Petitioner contends that because the children were placed with a relative, the court's termination of her parental rights was unnecessary. According to petitioner, the DHHR failed to establish that termination was necessary for the children's welfare.[3]

---

[2]The father voluntarily relinquished his parental rights. According to the parties, the permanency plan for J.P.-2 is adoption by his foster family. J.P.-1 is placed in a residential treatment facility. Following treatment, the permanency plan for J.P.-1 is adoption by a foster family.

[3]In passing, petitioner states that she was unable to meaningfully participate in her improvement period due to her incarceration. However, petitioner does not expand upon this

(continued . . .)

3

At the outset, we note that the court found that termination was the least restrictive dispositional alternative when considering all evidence presented throughout the proceedings. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. Petitioner does not challenge the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future. Indeed, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

Here, the evidence supports the required finding above that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Therefore, petitioner was not entitled to a less restrictive disposition. Nonetheless, the record also supports the circuit court's finding that termination was necessary for the children's welfare in light of the children's young ages and their need for stability and permanency. As we have previously noted,

> the early, most formative years of a child's life are crucial to his or her development. There would be no adequate remedy at law for these children were they permitted to continue in this abyss of uncertainty. We have repeatedly emphasized that children have a right to resolution of their life situations, to a basic level of nurturance, protection, and security, and to a permanent placement.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 257, 470 S.E.2d 205, 211 (1996). The DHHR established that the children suffered from numerous developmental delays and behavioral issues related to trauma and neglectful parenting, which resulted in the children needing extensive therapies and interventions. In fact, contrary to petitioner's assertion, J.P.-1 was not placed with a relative at the time respondents filed their briefs in this matter and was instead receiving

---

contention, nor does she argue that her termination was wrongfully based upon her incarceration. Additionally, the record shows that petitioner was released from incarceration during a portion of the underlying matter and failed to drug screen and was ultimately removed from a substance abuse treatment program. Accordingly, we decline to apply the analysis in Syllabus Point 4 of *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

treatment at a facility due to these issues. Regarding bonds with the children, the record shows the petitioner was unable to exercise visits due to her incarceration for the majority of the proceedings, but also failed to exercise visits while not incarcerated due to her failure to drug screen. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). A less restrictive dispositional alternative would have delayed permanency for these children, perhaps even indefinitely, for a parent that was not willing to address the issues of abuse and neglect. Therefore, not only did the circuit court not err in finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future, but also did not err in finding that termination was necessary for the children's welfare. Accordingly, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 7, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment